Albert L. Brinkman #133444
Name and Prisoner/Booking Number

ASPC - Tucson, Manzanita 5-B-34
Place of Confinement

P.O. Box 24401
Mailing Address

Tucson, AZ. 85734-4401
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

```
┌─────────────────────────────────────┐
│ ___ FILED        ___ LODGED          │
│ ___ RECEIVED     ___ COPY            │
│  2    JUL 3 1 2009    2              │
│       CLERK U S DISTRICT COURT       │
│        DISTRICT OF ARIZONA           │
│ BY___                    DEPUTY      │
└─────────────────────────────────────┘
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

ALBERT L. BRINKMAN )
(Full Name of Plaintiff)          Plaintiff, )
)
vs. )   CASE NO. CV08-670-TUC-FRZ
)   (To be supplied by the Clerk)
(1) DORA B. SCHRIRO, et al. )
(Full Name of Defendant) )
)
(2) )
)   **CIVIL RIGHTS COMPLAINT**
(3) See Pages 2-2   for )   **BY A PRISONER**
)
(4) all Defendants named )   ☐ Original Complaint
Defendant(s). )   ☒ First Amended Complaint
☒ Check if there are additional Defendants and attach page 1-A listing them. )   ☐ Second Amended Complaint
)   Jury Trial Demanded

### A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   - ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   - and ☒ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   - ☒ Other: Pendant Jurisdiction on State Law claims .

2. Institution/city where violation occurred: Arizona Dept. of Corrections . Tucson and Phoenix Prisons.

Revised 3/9/07                     1

**550/555**

## B. DEFENDANTS

1. Name of first Defendant: _Dora B. Schriro_ . The first Defendant is employed as:
_former Director of ADOC_ at _ADOC Central Office, Phx_ .
(Position and Title)                                                (Institution)

2. Name of second Defendant: _Charles Ryan_ . The second Defendant is employed as:
_Acting Director of ADOC_ at _ADOC Central Office, Phx._
(Position and Title)                                                (Institution)

3. Name of third Defendant: _Ivan Bartos_ . The third Defendant is employed as:
_former Complex Warden_ at _ASPC-Lewis Prison_ .
(Position and Title)                                                (Institution)

4. Name of fourth Defendant: _Greg Fizer_ . The fourth Defendant is employed as:
_Warden-Tucson Prison Complex_ at _ASPC-Tucson Prison_ .
(Position and Title)                                                (Institution)

*Continued on page 2b...

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☒ Yes   ☐ No

2. If yes, how many lawsuits have you filed? _1_ . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _Albert L. Brinkman_ v. _Dora B. Schriro, et al._
      2. Court and case number: _CV06-512-TUC-CKJ_ .
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Pending_
      _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____ .
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
      _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____ .
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
      _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

B. Defendants cont.

5. Name of fifth Defendant: <u>Mr. Ramos</u>. The fifth Defendant is employed as: <u>Former Deputy Warden of Lewis-Rast Unit</u> at <u>ASPC-Lewis Prison</u>.

6. Name of sixth Defendant: <u>John Palosaari</u>. The sixth Defendant is employed as: <u>Warden of the Lewis Prison Complex</u> at <u>ASPC-Lewis Prison</u>.

7. Name of seventh Defendant: <u>Laura Schweitzer</u>. the seventh Defendant is employed as: <u>Former Deputy Warden of Tucson-Santa Rita Unit</u> at <u>ASPC-Tucson Complex</u>.

8. Name of eighth Defendant: <u>Cheryl Dossett</u>. The eighth Defendant is employed as: <u>Appeals Officer</u> at <u>ADOC Central Office-Phoenix</u>.

9. Name of ninth Defendant: <u>Aurora Aguilar</u>. The ninth Defendant is employed as: <u>Hearing Officer</u> at <u>ADOC Central Office-Phoenix</u>.

10. Name of tenth Defendant: <u>COIV Mejia</u>. The tenth Defendant is employed as: <u>Correctional Officer IV/Administrator</u> at <u>ASPC-Lewis</u>.

11. Name of eleventh Defendant: <u>Mike Linderman</u>. The eleventh Defendant is employed as: <u>Pastoral Services Administrator</u> at <u>ADOC Central Office</u>.

12. Name of twelfth Defendant: <u>Jennifer Lyons</u>. The twelfth Defendant is employed as: <u>ADOC Publications Review Officer</u> at <u>ADOC Central Office</u>.

B Defendants cont.

13. Name of thirteenth Defendant: <u>Gordon Vernon</u>.
    The thirteenth Defendant is employed as: <u>Former</u>
    <u>Senior Chaplain</u> at <u>ASPC-Tucson Prison</u>.

14. Name of fourteenth Defendant: <u>Mr. Kingsland</u>.
    The fourteenth Defendant is employed as:
    <u>Senior Chaplain at ASPC-Lewis Prison</u>.

15. Name of fifteenth Defendant: <u>Phil Irby</u>
    The fifteenth Defendant is employed as: <u>Senior</u>
    <u>Chaplain</u> at <u>ASPC-Tucson Prison</u>.

16. Name of sixteenth Defendant: <u>Mark Winslow</u>.
    The sixteenth Defendant is employed as:
    <u>Unit Chaplain</u> at <u>ASPC-Tucson, Manzanita</u>.

17. Name of seventeenth Defendant: <u>Rodney Daughtry</u>.
    The seventeenth Defendant is employed as:
    <u>former COIII/Grievance Coordinator-Rast Unit</u>.

18. Name of eighteenth Defendant: <u>J. Kokemor</u>
    The eighteenth Defendant is employed as:
    <u>COIII/Grievance Coordinator-Tucson Santa Rita Unit</u>.

19. Name of nineteenth Defendant: <u>Ms. Dean</u>
    The nineteenth Defendant is employed as:
    <u>COIII (Correctional Officer III)-Tucson Santa Rita Unit</u>

20. Name of twentyeth Defendant: <u>James Beverly</u>
    The twentyeth Defendant is employed as:
    <u>COIII (Correctional Officer III)-Tucson Santa Rita Unit</u>

2c

B. Defendants cont.

21. Name of twenty-first Defendant: <u>COIII D. Rhoads</u>.
The twenty-first Defendant is employed as:
<u>COIII (Correctional Officer III) - Tucson Santa Rita</u>.

22. Name of twenty-second Defendant: <u>Wanda Hofmann</u>.
The twenty-second Defendant is employed as:
<u>Assistant Attorney General, A.G.'s office, Tucson</u>.

23. Name of twenty-third Defendant: <u>COIV D. Han</u>.
The twenty-third Defendant is employed as:
<u>COIV (Correctional Officer-IV) - Tucson Santa Rita</u>.

24. Name of twenty-fourth Defendant: <u>Cindy K. Jorgenson</u>.
The twenty-fourth Defendant is employed as:
<u>U.S. District Court Judge - Arizona, Tucson Div</u>.

25. Name of twenty-fifth Defendant: <u>Dr. James Baird</u>.
The twenty-fifth Defendant is employed as:
<u>Health Services Director for ADC - Central Office</u>.

26. Name of twenty-sixth Defendant: <u>Dennis Kendall</u>.
The twenty-sixth Defendant is employed as:
<u>Health Services Director for ADC - Central Office</u>.

27. Name of twenty-seventh Defendant: <u>Richard Pratt</u>.
The twenty-seventh Defendant is employed as:
<u>Facility Health Administrator (FHA) - Lewis Complex</u>.

28. Name of twenty-eighth Defendant: <u>Dennis Chenail</u>.
The twenty-eighth Defendant is employed as:
<u>Facility Health Administrator (FHA) - Tucson Complex</u>.

29. Name of twenty-ninth Defendant: <u>Dr. R.A. White</u>.
The twenty-ninth Defendant is employed as:
<u>Medical Doctor (MD) for ADC - Tucson Complex</u>.

B. Defendants cont.

30. Name of thirtieth Defendant: <u>Ronolfo Macabuhay</u>.
The thirtieth Defendant is employed as:
<u>Medical Doctor (MD) at Buckeye-Lewis Complex</u>.

31. Name of thirty-first Defendant: <u>Dr. Vinluan</u>.
The thirty-first Defendant is employed as:
<u>Medical Doctor (MD) at Buckeye-Lewis Complex</u>.

32. Name of thirty-second Defendant: <u>Joseph Whaley</u>.
The thirty-second Defendant is employed as:
<u>Medical Doctor (MD) at Tucson Prison Complex</u>.

33. Name of thirty-third Defendant: <u>COII Michael</u>.
The thirty-third Defendant is employed as:
<u>Correctional Officer II at Tucson-Santa Rita Unit</u>.

34. Name of thirty-fourth Defendant: <u>James Baldwin</u>.
The thirty-fourth Defendant is employed as:
<u>Unit Chaplain at Buckeye-Lewis Complex</u>.

35. Name of thirty-fifth Defendant: <u>Raymond Helms</u>.
The thirty-fifth Defendant is employed as:
<u>Unit Chaplain at Tucson-Santa Rita Unit</u>.

36. Name of thirty-sixth Defendant: <u>Gerald Thompson</u>.
The thirty-sixth Defendant is employed as:
<u>former Deputy Warden at Buckeye, Lewis-Rast Unit</u>.

37. Name of thirty-seventh Defendant: <u>E. Cruz</u>.
The thirty-seventh Defendant is employed as:
<u>Correctional Officer II (COII) at Lewis-Rast Unit</u>.

38. Name of thirty-eighth Defendant: <u>COII Brandon</u>.
The thirty-eighth Defendant is employed as:
<u>Correctional Officer II (COII) at Lewis-Rast Unit</u>.

2e

B. Defendants cont.

39. Name of thirty-ninth Defendant: <u>Kevin Lewis</u>.
The thirty-ninth Defendant is employed as:
<u>Medical Doctor (MD) at Tucson Prison Complex</u>.


————————— End of Defendants listing —————————

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: Right of Access to the Courts and to seek legal redress for constitutional torts.

2. Count I. Identify the issue involved. Check only one. State additional issues in separate counts.

   ☐ Basic necessities     ☐ Mail     ☒ Access to the court     ☐ Medical care
   ☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3. Supporting Facts. State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1. The Prison Litigation Reform Act (PLRA) and decisions of the Supreme Court require all inmates to exhaust all available administrative remedies prior to filing court action in federal courts.

   2. In July of 2005, the Plaintiff began filing grievance documents while housed at the Arizona State Prison Complex-Lewis, Rast Unit (ASPC-Lewis, Rast) on allowable grievance issues under the ADC Grievance System (the policy) known as Department Order #802 (D.O. 802).

   3. The Plaintiff filed the grievance documents in an effort to resolve valid and serious issues of taking of monies and property without due process or compensation, delay and denial of adequate medical and dental care, and retaliation against Plaintiff by Rast Unit prison officials.

   4. Defendants CCIII Rodney Daughtry, CCIV Mejia, Deputy Warden Ramos, Warden Ivan Bartos, Appeals Officer Cheryl Dossett, (cont.)
   * Continued on Page 3b...

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).
   The Defendants tortious acts and omissions directly caused and resulted in dismissals of valid constitutional claims and violations of his rights to access and seek redress in the courts; unnecessary delay and monetary expenses; entitling Plaintiff to damages.

5. Administrative Remedies:

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☒ Yes   ☐ No

   b. Did you submit a request for administrative relief on Count I?     ☒ Yes   ☐ No

   c. Did you appeal your request for relief on Count I to the highest level?     ☒ Yes   ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

## Count I

(4 cont.) ... Director Dora Schriro and Facility Health Administrator James Pratt were all parties to the ADC Grievance System and administrative exhaustion process under their established Department Order #802 (D.O. 802) for all of the grievance documents filed by Plaintiff at the Lewis-Rast Unit from July 2005 through November 2005 while confined there.

5. The above named Defendants engaged in a collusion and conspiracy to thwart, hinder, interfere with and to deny the Plaintiff the ability to exhaust his administrative remedies; which they knew is required by law; in a concerted and systemic scheme to later claim "failure to exhaust" as a defense, to obtain dismissals of valid constitutional claims in a court of law and to deny the Plaintiff access to the courts and the ability to vindicate his rights in a legal forum.

6. The actions and omissions of the Defendants above did in fact lead to and result in court dismissal of constitutional claims, wrongfully depriving the Plaintiff of his right to court access and resulting in the requisite injury and prejudice to state a claim for damages.

## Count I

7.   Defendant COIII Rodney Daughtry engaged in a series of unlawful and deliberate actions and omissions, in a scheme to deny and deprive the Plaintiff of his right to access the courts.

8.   From July until November of 2005, Defendant Daughtry was sent numerous grievance documents on serious, grievable, allowable issues of: taking of property and monies by ADC officials without due process or compensation, conditions of confinement, denial of medical and dental care, retaliation by staff for the exercise of lawful and constitutionally protected rights, and others.

9.   Defendant Daughtry acted outside of the ADC's policies, rules, established regulations, orders and mandates; to deny the Plaintiff exhaustion of administrative remedies and court access; by refusing to log, number, investigate, respond to and forward to higher officials grievance documents.

10.  Defendant Daughtry acted outside of the ADC's policies, rules, regulations, orders, mandates and State laws by destroying and disposing of grievance documents and records, for the intentional purpose of denying Plaintiff the administrative remedies/exhaustion process and his access to the courts.

## Count I

11.  Defendant Daughtry created and made-up; outside of ADC policies and orders; false, ficticious restrictions, status, requirements and actions, on September 16, 2005, which were perpetuated and carried forward by prison officials until at least October of 2008, for the purpose of denying Plaintiff exhaustion of administrative remedies and access to the courts.

12.  Defendant Daughtry then submitted an untruthful, false and perjurious sworn affidavit to a court of law on January 22,[1] 2007; referring to his past actions above; for the intent and purpose of causing dismissal of constitutional claims and denial of access to the courts on those claims.

13.  That Defendant Daughtry's deliberate, violative and unlawful actions and omissions did, in fact, cause and result in dismissal of claims and denial of access to the courts on those claims on September 11, 2007 (order).

14.  Defendant Daughtry's actions above have resulted in the required constitutional injury and prejudice to state a claim for damages.

---

[1] Daughtry's 1-22-07 Affidavit was appended to and actually submitted to the court in a May 16, 2007 Rule 12(b) motion.          3d

Count I

15.   Defendants Director Schriro, Warden Ivan Bartos, Deputy Warden Ramos and Central Office Appeals Officer Cheryl Dossett were all notified and had knowledge of the unlawful, violative misconduct of their subordinates.

16.   Defendants Schriro, Bartos, Ramos, Mejia and Dossett failed and refused to properly train and supervise their subordinates from July of 2005 through December of 2008.

17.   Defendants Schriro, Bartos, Ramos, Mejia, and Dossett failed and refused to take any corrective action while Plaintiff's rights were being violated and gave actual approval and authorization to the violative, unlawful acts of their subordinates from July 2005 through December 2008.

18.   The actions of failing to train, supervise, discipline and correct subordinate staff by the above supervisory officials, and their approval and authorization of actions and omission by employees, in violation of orders, policies, regulations and law, led to, caused and resulted in the Plaintiff being denied access to the courts and his right to seek redress for violations of his rights.

## Count I

19. Defendants Schriro, Bartos, Ramos, Mejia and Dossett acted in collusion and conspiracy with Defendant Daughtry and others to cover-up civil rights violations against the Plaintiff that occurred from July 2005 through December 2008 and authorized and ordered subordinates to create and submit false, perjured documents to a court in furtherance of the conspiracy and cover-up, for the purpose of denying the Plaintiff access to the courts and escaping legal action.

20. Under the laws and constitutions of Arizona and the Federal Government, the oath of office, and the written rules and regulations of the Arizona Department of Correction (ADC), line officers and supervisory officials have an affirmative duty to intercede and prevent crimes, rights violations and misconduct committed by employees and to report and take corrective action on such conduct whenever they become aware of it.

21. Upon his transfer from Lewis-Rast Unit to Tucson-Santa Rita Unit in November 2005, the Plaintiff continued to attempt to obtain administrative remedies, or exhaustion on the issues that occurred at Rast unit.

3f

Count I

22.   The Plaintiff filed final-step grievance appeals to then grievance coordinator COIII J. Kokemor, to exhaust remedies and to take court action on civil rights violations.

23.   Defendant COIII Kokemor contacted COIII Daughtry at Rast unit, and learning of the tactics and actions engaged in by Daughtry to deny the Plaintiff the grievance system at Rast, COIII Kokemor decided to support the misconduct and engage in the same type of misconduct and violations at Santa Rita, with the intent and purpose of thwarting and denying exhaustion of remedies and denying Plaintiff access to the courts.

24.   That from Plaintiff's arrival at Tucson on November 15, 2005, until he was removed from the position of grievance coordinator due to misconduct and ineptitude on the job, Defendant Kokemor engaged in acts outside of and in violation of ADC orders, policies and regulations, rejected and refused to log, number, account for, investigate, respond to and forward to higher officials grievance documents filed by Plaintiff, for the purpose of denying exhaustion of remedies and Plaintiff's access to the courts.

3g

## Count I

25.   Defendant Kokemor engaged in a followed through on a scheme and conspiracy with Defendants COIII Daughtry, Director Schriro, Warden Bartos, Deputy Warden Ramos, COIV Mejia, and Central Office Grievance Appeals/Hearing Officers Dossett and Aurora Aguilar, to violate and ignore the ADC orders and regulations, for the intentional purpose of denying the Plaintiff exhaustion of remedies, to then raise a defense of 'failure to exhaust' in court, to cause wrongful dismissal of exhausted claims (by both policy and law) and to deny the Plaintiff access to the courts.

26.   The Plaintiff submitted grievance appeals to Defendant Kokemor at the Tucson-Santa Rita unit, which Kokemor returned and refused to process, as his predecessor Daughtry did at Rast unit previously, thus denying Plaintiff the administrative/exhaustion process on serious constitutional claims.

27.   While at the Tucson-Santa Rita unit, prison officials continued to delay and deny medical and dental care to Plaintiff, violated his rights to religious freedom and exercise, and engaged in unlawful retaliation against Plaintiff for his protected activities of filing complaints and a civil rights lawsuit.

## Count I

28.   The Plaintiff filed grievances and appeals to grievance coordinator COIII Kokemor on the abuses, misconduct and rights violations that were happening at Santa Rita and Defendant Kokemor rejected and refused to process the serious complaints, denying Plaintiff exhaustion of remedies, which led to and directly caused Plaintiff to be denied court access.

29.   After COIII Kokemor was removed from the position of grievance coordinator at Santa Rita, for misconduct, violating Department Orders and/or incompetence, several prison officials were appointed, filled-in, or simply inserted themselves into the grievance process as acting grievance coordinators and unit COIII's.

30.   From 2006 through 2007, Plaintiff's filed grievance documents were, at various times, sent to: Defendants COIII James Beverly, COIII Dean, COIII Rhoads, COIV D. Han, Deputy Warden Schweitzer and Complex Warden Greg Fizer.

31.   The above Defendants engaged in the same pattern of conduct and concerted scheme of rejecting and refusing grievance documents, denying Plaintiff exhaustion of remedies and denial of access to the courts.

3i

## Count I

32.   Grievance documents and complaints of the actions and omissions of subordinate staff above were sent to and received by Defendants Director Schriro, Cheryl Dossett and Aurora Aguilar at ADC Central Office, numerous times.

33.   Defendants Schriro, Dossett and Aguilar took no corrective action to stop abuses and rights violations, or the misconduct and violations of orders by subordinate employees and condoned and gave tacit and actual approval to the violations

34.   After a §1983 lawsuit was filed in federal court in September 2006, the above named Defendants conspired with their attorney, Assistant Attorney General Wanda Hofmann, to bring their scheme to cause dismissal of claims and denial of court access into play.

35.   Defendant Assistant Attorney General Wanda Hoffmann conspired with the above named Defendants to lie to the court, to present and suborn perjurious, false affidavits and documents to the court, for the purpose of getting the court to dismiss claims and deny Plaintiff redress and, in fact, did submit to the court perjured affidavits and false documents.

3j

## Count I

36.   Defendant District Court Judge Cindy K. Jorgenson acted in collusion and conspiracy with Defendant attorney Hofmann and the named prison official Defendants, purposely ignored evidence, documents, affidavits of Plaintiff and witnesses, as well as the ADC Department Order (D.O. 802) that governed the Defendants' conduct and the exhaustion process and dismissed valid, exhausted constitutional claims.

37.   The actions and omissions of the above named Defendants were concerted, were planned and conspired to achieve the desired outcome of denying Plaintiff court access and were carried through to that unlawful end with the participation of a State attorney and sitting federal judge as co-conspirators.

38.   Defendant Judge Jorgenson is named and a party to this lawsuit pursuant to Bivens and federal question jurisdiction.

39.   The Court has pendant/supplemental jurisdiction over State law claims and State law and constitutional violations that occurred in this case.

## COUNT II

1. State the constitutional or other federal civil right that was violated: Delay and Denial of Medical Care causing injuries and pain.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1. Plaintiff Albert Brinkman entered the Arizona Department of Corrections (ADC) & arrived at the Buckey-Lewis Prison Complex in 1999, with a number of chronic health conditions.
   2. The conditions include: chronic back problems, pain and debilitation; hypertension/high blood pressure; high cholesterol; arrythmea-erratic heart beat; arteriosclerosis-blockage of vessels; stomach, bowel, colon and rectal problems; foot bone and toe deformaty.
   3. Upon Plaintiff's arrival at Lewis Complex, prison officials issued him wrong-sized prison boots that were too small, exacerbating his foot problems and causing pain.
   4. The Plaintiff sought medical treatment and accomodations from Doctors at Lewis Complex and Defendant F.H.A. Pratt for his foot problems, back problems, chronic cardiovascular conditions and routine dental work.
   5. Defendant F.H.A. Pratt and Defendant Doctors Vinluan and Macabuhay refused to order or provide proper footwear, a back brace, needed tests and medications, and dental repairs.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Plaintiff suffered sustained, painful, permanent physical injuries to limbs, extremeties and internal organs; aggravated chronic conditions; infection, swelling, pain and suffering.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## Count II

6.   The Plaintiff was housed at the Lewis Complex until November 2005 and again from January through October 2008.

7.   The Plaintiff continually sought medical and dental treatment from Defendants FHA Pratt, Dr. Macabuhay and Dr. Vinluan while housed at the Lewis Complex, by submitting numerous Health Needs Request forms to them.

8.   When Defendants Pratt, Macabuhay and Vinluan took no action, or flatly denied the Plaintiff needed treatment, special needs orders and accomodations for his serious conditions, the Plaintiff wrote inmate letters and filed formal grievances and appeals to Defendants.

9.   Defendants FHA Pratt, Dr. Macabuhay, Dr. Vinluan, Dr. Baird, Dr. Kendall, and Director Schriro were fully informed through filed documents above that Plaintiff was being subjected to harmful delays and denials of medical and dental care, yet continued to allow the unlawful conduct to occur for the entire period of time that Plaintiff was housed at Lewis Complex.

10.   The Defendants above failed and refused to provide needed medical items or to perform needed examinations and tests in a timely manner.

4b

Count II

11.   The failure and refusal to provide needed accomodations and medical items (back brace, proper mattress, foam bed wedge, proper size shoes, consistent and uninterrupted medications, special needs orders) and their delay in obtaining examinations and diagnostic procedures (colonoscopy, endoscopy, e.k.g., angiogram, podiatrist consult and exam, x-rays, sonogram), exacerbated existing injuries and conditions and allowed other conditions to develop and worsen, all under the watch of and full knowledge of Defendants FHA Pratt, Dr. Macabuhay, Dr. Vinluan, Schriro, Kendall and Baird.

12.   Serious and painful medical conditions have been detected and diagnosed after delayed tests were finally performed (diverticulitus in intestinal tract, tumorous polyps in colon, hemorroids, heart/vascular blockage, ulcer bleeding in stomach, back/spinal deformaties), in addition to already-known foot problems and back problems that have caused pain and debilitation for years.

13.   Despite their knowledge of the above conditions, Defendants above have provided no treatment at all, or inadequate treatment.

4c

## Count II

14. Defendants FHA Pratt, Dr. Vinluan, Dr. Macabuhay, Dr. Baird, Dr. Kendall, and Director Schriro have taken away and have allowed to be taken and cancelled, special needs medical items and orders made by other ADC doctors at other prison units, causing the Plaintiff injuries, pain and suffering, loss, debilitation and disability.

15. Items, medical orders and treatments were withdrawn and denied by Defendants Pratt, Macabuhay and Vinluan without conducting any examinations or tests and without any explanation for their actions and omissions.

16. The above conduct has been an ongoing pattern, practice and custom during the Plaintiff's confinement at Lewis Complex from 1999 through November 2005 and again from January through November 2008.

17. While housed at the Lewis Complex, the Plaintiff suffered dental problems (lost fillings, cavaties) that required routine and standard dental care and repairs to fix.

18. Defendants Pratt, Baird, Kendall and Schriro refused to provide proper dental care and allowed minor conditions to develop into tooth loss, abcess, infections, swelling, pain and physical sickness.

4d

## Count II

19. The Plaintiff was forced to wear wrong-size footwear the entire time he was housed at Lewis Complex, from 1999-2005 and again in 2008 and Defendants Pratt, Macabuhay and Vinluan never ordered or made any effort to provide proper medical footwear for Plaintiff.

20. As the result of the above, the Plaintiff suffered foot constriction, foot deformaties, pain in walking and standing, hip, knee, back, neck and other joint/skeletal pain and problems from being made to wear improper, too small shoes.

21. Upon his transfer to the Tucson Complex in November 2005 and again from November 2008 to present, the Plaintiff sought medical and dental care for the chronic, ongoing and untreated conditions developed and exacerbated at Lewis Complex.

22. The Plaintiff sought treatment, accomodations (items and special needs orders), and medications from Defendants FHA Dennis Chenail, Dr. R.A. White, Dr. Whaley, and Dr. Lewis.

23. The Plaintiff was still not provided proper shoes at Tucson Complex and was forced to literally be barefoot for an entire month.

4e

## Count II

24. Defendants FHA Chenail, Dr. White and Dr. Whaley denied the Plaintiff proper-fitting shoes for two full years after his arrival at Tucson Complex, despite their knowledge of Plaintiff's serious foot and back problems, pain and injury being inflicted.

25. Defendants FHA Pratt, Dr. Macabuhay, Dr. Vinluan, FHA Chenail, Dr. White, Dr. Whaley, and Dr. Lewis have failed and refused to provide proper treatment for Plaintiff's serious problems of hypertension and cardio-vascular disease, colon and rectal problems, bleeding ulcer, hemorrhoids, skin problems, spinal and back problems, and dental repairs.

26. Defendants FHA Pratt, Macabuhay, Vinluan FHA Chenail, White, Whaley, and Lewis have allowed critical medications for the above conditions to expire, to go unissued and missed for prolonged periods, have with-drawn and cancelled needed medications and treatment items and have refused to order and provide needed medical items and accomodations for Plaintiff's serious, painful and debilitating conditions above, causing Plaintiff harm, injury, pain and suffering, and uncontrolled, life-threatening conditions.

4f

Count II

27. Defendants Director Schriro (former), acting Director Ryan, and Health Services Directors Baird and Kendall have each been informed and have knowledge of the Plaintiff's serious medical conditions, yet have taken no corrective action to date.

28. The Plaintiff has been found to have a large and growing blood vessel aneurysm in his abdominal area, a life-threatening condition.

29. Defendants above have taken no action and provided no treatment for an aneurysm that could burst, bleed-out, and kill the Plaintiff within minutes.

30. The Plaintiff fell and broke his arm as the direct result of the failure and refusal of Defendants Pratt, Chenail, Schriro, Ryan, Baird, Kendall, Macabuhay, Vinluan, White, Whaley and Lewis to provide long-promised non-slip shower shoes to Plaintiff.

31. After Plaintiff broke his arm on March 31, 2008, Defendants Pratt and Dr. Macabuhay failed and refused to provide treatment for it (no cast or sling, no pain medications, no follow-ups or therapy), resulting in pain, weakness, loss of movement and disability.

Count II

32.  To date, the above Defendants <u>still</u> have not ordered or provided the Plaintiff with the non-slip shower shoes ($5.00 item) that he has been promised since 2007.

33.  All Defendants named above knew or should have known that the Plaintiff's rights to adequate and necessary medical and dental care under the Eighth and Fourteenth Amendments were, and are, being violated and they could not have believed that their actions, omissions and state of mind was lawful or reasonable and they made a conscious choice to delay and deny care.

34.  All Defendants named above have a systemic policy, practice and custom of delaying and denying medical care until injurious or even life-threatening consequences occur, as is the case with the Plaintiff.

35.  The above stated actions, omissions, personal involvement and knowledge of Defendants Schriro, Ryan, Baird, Kendall, Pratt, Chenail, Macabuhay, Vinluan, White, Whaley and Lewis, states a claim for deliberate indifference under the 8th and 14th Amendments.

## COUNT III

1.  State the constitutional or other federal civil right that was violated: _Freedom and Exercise of Religion_

2.  **Count III.** Identify the issue involved. **Check only one.** State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☒ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☐ Other: _____.

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    1. The Plaintiff is a practitioner of the religious faith of Wicca, also known as Witchcraft, The Craft, and The Old Religion (Pre-Christian, Pagan).
    2. The Plaintiff alleges that the prison official Defendants below have engaged in actions, omissions and conduct that has, and continues to, burden and deny the Plaintiff freedom of his religious exercise and that said conduct is discriminatory, unequal, oppressive and deliberately indifferent to the Plaintiff's rights under the 1st, 8th, and 14th Amendments to the U.S. Constitution, Article 2 of the Arizona Constitution, State Law (A.R.S. 41-1493), Federal Law (R.L.U.I.P.A.), and the Interstate Corrections Compact (A.R.S. 31-471 thru 31-492.).
    3. The Plaintiff's beliefs are sincere and he is bound by the settled tenets and ceremonial systems of Wicca in his faith practices, which he has always attempted to do in a manner that does not threaten the safety and security of any prison.
    *Continued on Page 5b*

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
    The Plaintiff has been subjected to burdening, denial and oppression of his religious faith and practice, which is intentional, discriminatory, unequal and systemic within the ADC system.

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Count III?   ☒ Yes  ☐ No
    c.  Did you appeal your request for relief on Count III to the highest level?   ☒ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
        _____.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

Count III

4.   The Plaintiff has been a Wiccan/Witch since 2005 in the Arizona Department of Corrections (ADC), but has studied and followed The Craft for a number of years prior to the "official" designation in ADC records.

5.   Since 2005, the Plaintiff has attempted to study and practice his faith in the ADC under the control of Defendants (former) Director Dora Schriro, acting Director Charles Ryan, Central Office Pastoral Services Administrator (PSA) Mike Linderman and a host of prison Chaplaincy personnel (Raymond Helms, Vernon Gordon, Phil Irby, Mark Winslow, Kingsland, and James Baldwin).

6.   From 2005 to the Present time (2009), the Plaintiff has attempted to order, obtain and make (hand-craft) ritual and ceremonial items for his use and practice of Wicca, none of which are, or have ever been, a threat to the safety, security and order of the ADC, or any prison unit.

7.   Defendant prison officials (Schriro, Ryan, Linderman, Helms, Vernon, Irby, Winslow, Kingsland, Baldwin) have refused to approve, have denied, have confiscated and destroyed the items that Plaintiff has made and tried to obtain for the practice of his faith.

## Count III

8.   The Plaintiff has submitted requests for approvals and orders to Defendants Chaplain Helms, Senior Chaplain Gordon, Senior Chaplain Kingsland, Chaplain Baldwin and Pastoral Services Administrator (PSA) Linderman, from November 2005 through July 2009.

9.   The items that Plaintiff has attempted to have approved and to obtain are innocuous, non-threatening items such as herbs, essential oils, incense, small candles, small bell, a wand, sea salt and similar ritual items in small sizes and quantities that would fit easily into the approved, legal-size religious items box in his possession.

10.   The Plaintiff's numerous attempts to get approval for and to obtain religious items for the practice of his faith have been repeatedly refused, rejected, denied and never processed by Defendants Helms, Gordon, Kingsland, Baldwin, Winslow, Irby and Linderman.

11.   The Plaintiff has requested Defendants provide fire (cheap butane lighter), to light a bowl of herbs for smoke-generating and purification ceremonies; a lighter that can be held by security staff or the chaplain when not used in Wiccan rituals.

## Count III

12.   Prison officials had approved lighters to be given to all of the Pagan faith groups for use during their smoke-generating ceremonies; Security staff had cleared and approved them; and they were given to the Wiccans, Druids, Asatru, and Native American Indians (NAI's) during group services, then returned to Security staff afterward; a reasonable accomodation for practice.

13.   When Defendant PSA Mike Linderman was informed that the Wiccans and other Pagan groups were being provided lighters for their smudging/purification ceremonies, he acted in a vindictive, retaliatory manner, overrode prison administrative and security officials' reasoned judgment, and ordered that the Wiccans and others were to no longer be allowed the use of lighters for ceremonies.

14.   Defendant Linderman's action effectively quashed and is denying the Plaintiff his sacred exercise of the ceremonial rites of circle casting, purification/smudging and magickal working, as fire and the lighting of herbs is a major component in Wicca.

15.   The Plaintiff and others had been provided the use of lighters for years, without a single incident of misconduct or concern.

5d

## Count III

16.    The Plaintiff and other Wiccans have repeatedly requested the reasonable accomodations for weekly group services, such as a proper area for worship and ceremony, a proper time for worship services, a sufficient amount of time for services and sabbats, and the ability to take meals in covered plastic trays out of the prison chow hall to be eaten after sabbat services, as is the correct practice.

17.    Defendants Chaplain Winslow, Senior Chaplain Irby and PSA Linderman have refused to consider and have refused to approve and provide the reasonable accomodations above to the Plaintiff and the Wiccan faith group, even though such accomodations have been both readily available and have been provided to other religious groups and inmates.

18.    Defendant administrative officials of ADC (former) Director Schriro, Director Ryan, (former) Warden Fizer, Warden Palosaari, and Deputy Wardens Schweitzer, Thompson and Aguilar, have been informed and have been aware that their entirely Christian Chaplaincy at the units, complexes and Central Office have been acting discriminatorily.

Count III

19.   Not only have Defendants Schriro, Ryan, Fizer, Palosaari, and unit Deputy Wardens allowed their chaplaincy employees (Helms, Baldwin, Winslow, Gordon, Irby, Linderman) to refuse to accomodate the Plaintiff and his Wiccan religious exercise, but they have authorized, approved of, and even codified the disparate, unequal and discriminatory practices in Department policy (D.O.904).

20.   Defendants Schriro, Ryan and Linderman have set policy, practice and custom to allow other faith groups to have special, private areas for religious ceremonies, the use of fire and lighters (i.e., Native American Indians); including large bonfires with burning logs and wood; special meals and feeding arrangements (Muslums, Jews) and religious items approved for their use and possession, while refusing and denying the same or similar accomodations and treatment to Plaintiff and Wiccans.

21.   Defendants Schriro, Ryan, Linderman and Lyons have banned, disallowed and excluded publications and items (catalogs, essential oils) that were previously allowed and without any legitimate reason, for the vindictive purpose of burdening/oppressing Plaintiff's exercise.

5f

Count III

22.   Defendants Schriro, Linderman, Helms, Baldwin, Irby and Winslow have engaged in acts of retaliation and intentional burdening and oppression of the Plaintiff's free exercise and practice of his faith, to include disciplinary action, refusal of religious services and subverting and violating their own Department Order (D.O. 904), in an ongoing (2005 to Date) practice and custom of oppression, suppression and discrimination against the Plaintiff and his religion of Wicca.

23.   On November 8, 2006, Defendants COIII James Beverly and COII Michaels confiscated all of the Plaintiff's sacred religious items and books, depriving the Plaintiff of the ability to study and practice his faith.

24.   On November 15, 2006, Defendants COIII Beverly, COIII Kokemor and Chaplain Helms; in the Plaintiff's presence; desecrated, disposed of, destroyed and damaged sacred items and books they had taken, then kept and withheld all of Plaintiff's religious materials for nearly a year, depriving the Plaintiff of religious exercise and substantially burdening his religious freedom and practice.

Count III

25. Defendant supervisors and administrators Schriro, Ryan, Linderman, Fizer, Schweitzer, Palosaari and Thompson were informed and aware that their subordinates were acting, and continue to act to date, in conduct that is unlawful, in violation of ADC policy and regulations and is oppressive and discriminatory toward the Plaintiff and his faith, yet have condoned it and have taken no corrective action to change or stop it.

26. The denial of and banning of religious publications, religious services, accomodations to worship, religious items and the taking and destruction of Plaintiff's religious items by Defendants Lyon, Helms, Vernon, Irby, Winslow, Kingsland, Baldwin and Linderman, shows the mind-set of indifference and the policy, practice and custom that is systemic and pervasive throughout the ADC of bias and favoritism toward Christianity-based religions and prejudice; with overt actions; against non-mainstream, non-Christian religions and believers such as Plaintiff.

27. The Defendants named above have used their official positions and power for the personal purpose of burdening and oppressing the exercise of the Plaintiff's sincere beliefs.

5h

## Count III

28.   The Plaintiff, and several others that have requested reasonable accomodations for non-Christian religions, have actually been given Religious Preference Change forms by Defendants Chaplain Helms and Baldwin and told to change their religious preference/designation in ADC, in order to "make things easier for them," and to be able to attend religious services.

29.   The Honorable Court has jurisdiction over the Federal Law (R.L.U.I.P.A. and C.R.I.P.A.) claims and has pendant, or supplemental jurisdiction over the State Law (A.R.S. 41-1493; Arizona Const. Art. 2) claims, as well as claims pursuant to the 1st, 5th, 8th and 14th Amendments applied to this matter.

## COUNT IV

1.   State the constitutional or other federal civil right that was violated: Retaliation for exercise of protected conduct; 1st, 8th and 14th Amendments.

2.   Count IV. Identify the issue involved.  Check only one.  State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail              ☐ Access to the court      ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion     ☒ Retaliation
   ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3.   Supporting Facts.  State as briefly as possible the FACTS supporting Count IV.  Describe exactly what each Defendant did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1. While housed at the Buckeye, Lewis-Rast Unit between July 2005 and November 2005, the Plaintiff filed legitimate grievances/complaints on the allowable issues of property and denial of medical and dental care.

2. When the unit COIII/Grievance Coordinator, Defendant Rodney Daughtry failed and refused to follow written Department Orders (D.O. 802) and process his grievance documents, the Plaintiff filed complaints to superiors (Defendants Warden Bartos, Deputy Warden Ramos, COIV Mejia) about Daughtry's misconduct.

3. In retaliation for Plaintiff's complaints filed against him, COIII Daughtry created/invented/fabricated a false, non-policy, invidious and personalized (to the Plaintiff only) status and classification ("Grievance Abuse Status"), to justify and cover-up staff misconduct and to refuse, reject and dispose of every grievance Plaintiff had filed at Rast unit.

* Continued on Page 66...

4.   Injury.  State how you were injured by the actions or inactions of the Defendant(s).
Plaintiff has been retaliated against by the ADC Defendants for constitutionally protected activities of filing complaints and grievances and for practicing his religious faith.

5.   Administrative Remedies.
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                    ☒ Yes  ☐ No
   b.   Did you submit a request for administrative relief on Count III?      ☒ Yes  ☐ No
   c.   Did you appeal your request for relief on Count III to the highest level?  ☒ Yes  ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

## Count IV

4.   The false, fraudulent status applied to the Plaintiff by COIII Daughtry was supported, approved and authorized by Defendants Bartos, Ramos and Mejia, for the purpose and intent of covering up staff misconduct and violations of policy, allow staff to continue to engage in misconduct and unlawful acts, and to "chill" Plaintiff's exercise, through intimidation, of his right to petition the government and to access the courts.

5.   The above actions had long-term and far-reaching effects, as prison officials at the Tucson-Santa Rita unit from November 2005 through December 31, 2007 picked-up on and used the ficticious "Grievance Abuse Status" to refuse to process, respond to, number and forward grievance documents filed at Tucson complex afterward.

6.   When the Plaintiff filed a §1983 lawsuit against prison officials in September 2006, defendant prison officials then used the antics and fraudulent classification/status game they had engaged in, to claim "Failure to Exhaust" administrative remedies and to obtain dismissal of valid constitutional claims on fraudulent grounds. See: Brinkman v. Schriro, et al., CV06-512-TUC-CKJ.

## Count IV

7. Upon Plaintiff's transfer to the Tucson complex, Santa Rita unit in November 2005 through December 31, 2007, he was subjected to a series of retaliatory disciplinary write-ups, suffering loss of good time credits by his home/sentencing state, Kansas, as a result of the retaliation.

8. Plaintiff was issued disciplinary tickets for his protected activities of filing complaints and grievances, some regarding misconduct by ADC staff.

9. Defendant COIII Dean wrote a disciplinary ticket against the Plaintiff on January 9, 2006, in retaliation for Plaintiff's complaint to another COIII (Gorkowski) about Dean's and COIII Kokemor's misconduct.

10. Defendant COIII Kokemor wrote a disciplinary ticket against the Plaintiff on October 19, 2006, in retaliation for Plaintiff's complaint about Kokemor's misconduct and violations of written Department Orders.

11. Defendant COII Michael, at the order and instruction of Defendant Chaplain Helms, wrote a disciplinary ticket against Plaintiff in retaliation for complaints filed against them by Plaintiff and for attending a Wicca religious service.

6c

Count IV

12.   Defendant COIII Beverly wrote two (2) disciplinary tickets against the Plaintiff on April 6, 2007, in retaliation for complaints filed about Beverly's misconduct and violations of written Department Orders and for the filing of a lawsuit (CV06-512-TUC-CKJ) against Beverly and his ADC cohorts.

13.   On November 11, 2006, just days after the filing of an Amended Complaint in the above cited case, Defendants COIII Beverly and COII Michael targeted the Plaintiff for an unlawful retaliatory action by confiscating all of the Plaintiff's sacred religious items and books, without a valid or compelling reason and in violation of written Department Orders, depriving the Plaintiff of his right and ability to study and practice his religion.

14.   In a further, continuing act of retaliation, Defendants COIII Beverly, Chaplain Helms, and COIII Kokemor subsequently desecrated, destroyed, damaged and disposed of sacred items, then kept remaining items and books from the Plaintiff for nearly a year, in order to retaliate, punish, intimidate, and prevent Plaintiff from practicing his faith.

Count IV

15.   Defendant PSA Linderman, in retaliation
for complaints filed against him and a conver-
sation between Linderman, the Plaintiff and
other Wiccan inmates about Linderman's acts
of discrimination, unequal treatment, burden-
ing and dictating how the Plaintiff can study
and practice his religion, banned the use and
ability to obtain sacred essential oils in ADC,
without any valid security concern or com-
pelling governmental interest, thereby denying
and preventing the Plaintiff from exercising
important ceremonial and sacred rites.

16.   Defendant Publications Review Officer at ADC
Central Office, Jennifer Lyons, in collusion
and conspiracy with Defendant Chaplain
Raymond Helms, in retaliation for complaints
filed against Helms and Linderman, banned
and "excluded" without any valid penological
reason or compelling governmental interest
the religious items catalog from the Pagan
products company Azure Green, depriving
the Plaintiff of the ability to order religious
items and to learn the information provided
in the publication; said banning/censoring
and denial of all Azure Green catalogs is
ongoing to date by Defendant Lyons.

6e

Count IV

17.   Upon Plaintiff's transfer to the Buckeye, Lewis-Rast unit in January 2008 and continuing through November 2008, Defendants COIII K. Bash, COIII Chris Bruemmer, and Deputy Warden Gerald Thompson, in retaliation for complaints and grievances filed by Plaintiff on denial of medical and dental care, lack of clothing and bedding and other serious issues, once again placed the Plaintiff on the fictitious, non-existent and non-policy classification they call "Grievance Abuse Status," refusing to address any of the serious issues that have been ongoing.

18.   Defendant COII E. Cruz wrote a disciplinary ticket against the Plaintiff on July 21, 2008, in retaliation for Plaintiff's exercise of filing complaints against a fellow ADC officer (COII Brandon) and to cover-up for an assault against the Plaintiff by that ADC officer.

19.   Defendants Director (former) Schriro, acting Director Charles Ryan and Wardens of the units above, have taken no corrective action, have condoned and given tacit and actual authorization to the unlawful conduct and have acted and failed to act in order to cover-up rights violations by employees.

6f

## COUNT V

1. State the constitutional or other federal civil right that was violated: Assault by staff causing serious bodily injury; 8th and 14th Amendments

2. Count V. Identify the issue involved. Check only one. State additional issues in separate counts.

   ☐ Basic necessities        ☐ Mail          ☐ Access to the court      ☐ Medical care
   ☐ Disciplinary proceedings  ☐ Property       ☐ Exercise of religion      ☐ Retaliation
   ☒ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.

3. Supporting Facts. State as briefly as possible the FACTS supporting Count V. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1. On July 21, 2008, while housed at the Buckeye, Lewis-Rast unit, the Plaintiff was subjected to an assault, battery and malicious and sadistic use of force against his person, by ADC staff, causing serious and permanent injury (hearing damage).
   2. On July 21, 2008 at approximately 1400 hours (2:00 P.M.), the Plaintiff approached the Rast Unit, Building One, C/D Pod control room, to speak with the control room officer, COII Brandon, and obtain the officer's name and Badge Number for the filing of a complaint to her superiors.
   3. The Plaintiff approached the Control Room, a glass and barred enclosure raised-up about five feet higher than the living area floors and which has a heavy, thick steel "trap" door at the rear for inmate/staff communications.
   4. The trap doors are about two inches thick, hinged on the inside of the Control Room and there is a heavy steel perforated grate covering the trap door opening to speak through.

   *Continued on Page 7b...

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).
   The assault and excessive force by prison staff caused serious and permanent, irreparable injury, pain and suffering (hearing damage and loss) in violation of Plaintiff's rights.

5. Administrative Remedies.
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count II?        ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____

## Count V

5. The trap doors are a few inches higher than the Control Room floor, placing them at about 5½' high, about face-level to a 6' tall person on the pod-living area floor.

6. The Plaintiff went up to the trap door, which was open, and asked Defendant COII Brandon for her name and badge number, as allowed by policy, to file a complaint/staff grievance against that officer.

7. Instead of providing the Plaintiff her name and badge number, as required by policy, COII Brandon became obviously angry at the question, turned her back on the Plaintiff, and began to obstinately refuse, making some smart remark about how she didn't have to give the Plaintiff her identity.

8. The Plaintiff was straining to hear Defendant Brandon's remarks, as she was talking with her back to the Plaintiff, and the Plaintiff had his right ear pressed against the steel grate of the trap door to listen.

9. Defendant COII Brandon then, without any warning, "mule-kicked" the heavy trap door, slamming it shut with a terrific force, right into the opening where the Plaintiff had his ear pressed to.

Count V

10.  The blast of the compressed air and the loud report of the heavy trap slamming shut was the equivalent to a shotgun blast or explosion hitting the Plaintiff directly in the Plaintiff's ear and side of his face; it felt like he had been punched.

11.  The Plaintiff screamed in pain and shock, put his hand over his ear and began yelling for help to the several officers milling around in the hallway outside the pod, telling the officers to get a supervisor and help.

12.  Defendant COII Brandon, who had just committed the vicious assault and injured the Plaintiff, calmly grabbed her personal backpack of items and left the Control Room, as it was shift-change and time for her to go home.

13.  The other officers outside the pod that the Plaintiff was pleading to help him and to call for assistance, ignored the Plaintiff's cries and pounding on the door, turned their backs and also left the building to go home.

14.  Defendant COII E. Cruz was coming on shift as Defendant Brandon left and saw Plaintiff yelling for help and kicking the pod door to get someone's attention.

7c

## Count V

15. Defendant COII Cruz left the Control Room and came into D-pod, where the Plaintiff was being talked to by COII Jackson, the other swing-shift officer that had arrived for work.

16. Defendant Cruz and COII Jackson had not witnessed the assault on the Plaintiff by Defendant Brandon and only saw the Plaintiff yelling for help and pounding on the pod door as they came in.

17. The Plaintiff was in extreme pain, his right ear was hurting and ringing and Plaintiff could not hear on his right side.

18. The Plaintiff told Defendant COII Cruz and COII Jackson that he had just been assaulted by the female Control Room COII and he needed immediate help.

19. Instead of summoning medical attention and a supervisor, Defendant Cruz handcuffed the Plaintiff behind his back, in violation of the Plaintiff's medical "front-cuff only" order, which caused the Plaintiff further pain from his back problems.

20. Defendant Cruz then took the Plaintiff into the building's Isolation Cell area.

21. Medical assistance for Plaintiff's injuries was never called by anyone.

7d

Count V

22.   Defendant Cruz informed the Plaintiff to submit a HNR (Health Needs Request) for medical, although Plaintiff was complaining of severe pain, that his head was ringing and that he could not hear anything in his right ear.

23.   The Plaintiff submitted the HNR the next day, but was not seen by any medical personnel until July 30, 2008.

24.   In the following days, the Plaintiff spoke to numerous prison officials to ascertain the identity of the female officer that had assaulted him, only to find staff involved in a "wall of silence" and cover-up of her identity.

25.   None of the staff (COII's) who knew and had worked daily with Defendant COII Brandon would tell the Plaintiff her name or number.

26.   None of the yard supervisors (Sgt. Holmes, Sgt. Pegg, Sgt. Apodaca, Lieutenant Berger, Sgt. Key, COIII Bruemmer) would tell the Plaintiff his assaulter's name and number.

27.   The Plaintiff finally got COII Brandon's name from another inmate that knew her, as all of the prison officials at Rast unit only attempted to cover-up the incident and retaliated against the Plaintiff/victim (see Count IV), while hiding Defendant Brandon's identity.

## Count V

28.   The Plaintiff's injuries were diagnosed as "barometric trauma" from the blast in the ear and Plaintiff continues to suffer from headaches, constant tinitus (ringing/buzzing) and loss of hearing in his right ear.

## Conclusion

The foregoing allegations and claims in this complaint claim violations of Plaintiff's rights under both State Laws (A.R.S. 41-1493, A.R.S. 31-127, and A.R.S. 31-471 et seq.); Article 2 of the Arizona Constitution; Federal Laws (R.L.U.I.P.A of 2000, C.R.I.P.A.); and the Federal Constitution's First, Fifth, Eighth and Fourteenth Amendments.

The Honorable Court has jurisdiction over the federal claims and pendant/supplemental jurisdiction over the state laws claims, pursuant to the Federal Tort Claims Act, the fact that the state law claims form part of the same case or controversy as the federal claims, and other settled authority.

7f

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. Declaratory and Injunctive Relief in the form of Court Orders to all Defendants.
2. Compensatory Damages that are just and fair against each Defendant.
3. Punitive Damages to punish Defendants for unlawful conduct and to assure that such conduct is prevented in the future.
4. All costs and Fees incurred by Plaintiff.
5. Any other relief deemed just and fair by the Court or a Jury.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____7 - 28 - 2009_____
                 DATE

_____
SIGNATURE OF PLAINTIFF
Albert L. Brinkman

_____Pro Se_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)
_____
_____
_____
(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

8